UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YITZ GROSSMAN,

                                        Plaintiff,

        -against-

WARDEN B. VON BLACKENSEE, in her
individual Capacity, CAPTAIN MATT
WHINERY, in his individual Capacity,
ASSISTANT/CAMP ADMINISTRATOR
CHRIS ENTZEL, in his individual capacity,
CHAPLAIN AVROHAM RICHTER, in his
individual capacity, J.L. MALDONADO, in
his individual capacity, and OFFICER AHAMAD
REZAK, a/k/a AHMED REZAK, in his
individual capacity,

                                        Defendants.

---

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: __02/19/2025__ |

19-cv-9191 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Yitz Grossman ("*Pro se* Plaintiff") commenced this action seeking redress for an incident occurring during his incarceration at F.C.I. Otisville Satellite Camp.[1] In his Second Amended Complaint ("SAC"), *pro se* Plaintiff asserts constitutional claims under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Claims I–III), 42 U.S.C. § 1985(3) (Claim IV), and the Religious Freedom Restoration Act ("RFRA") (Claim V) against the Otisville Warden B. Von Blackensee, Captain Matt Whinery, Executive Assistant/Camp Administrator Chris Entzel, Chaplain Avrohom Richter, and Associate Warden J.L. Maldonado ("Supervisory Defendants")[2] and Ahamad Rezak ("Defendant Rezak") (collectively, "Defendants"). Additionally, though not a named party to this action, *pro se* Plaintiff brings

---

[1] *Pro se* Plaintiff was released to home confinement in March 2019 and released from BOP custody altogether in December 2019.

[2] Supervisory Defendants' Memorandum in Support of Law (ECF No. 64) notes that the names of Supervisory Defendant Whinnery and Defendant Rabbi Abraham Richter are misspelled in the caption.

constitutional and Federal Tort Claims Act ("FTCA") claims against the United States (Claims VI, VII, VIII, IX, and X). (ECF No. 55.)

Presently before the Court are Supervisory Defendants' and Defendant Rezak's respective Motions to Dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6). Further, in the SAC, *pro se* Plaintiff seeks to amend the caption of this case to include Nicole Gulliver, a case manager with the BOP, against which *pro se* Plaintiff alleges post-administrative retaliation and injuries. (SAC fn. 1.) For the following reasons, Supervisory Defendants' Motion to Dismiss is GRANTED in its entirety and Defendant Rezak's motion is GRANTED IN PART and DENIED IN PART. *Pro se* Plaintiff's request to add Nicole Gulliver to the instant case is DENIED.

**FACTUAL BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in *pro se* Plaintiff's favor, as summarized below.

**A.   *Pro se* Plaintiff's Injury and Treatment**

*Pro se* Plaintiff is an observant Orthodox Jew. (SAC ¶ 20.) As such, *pro se* Plaintiff is required to adhere to certain religious restrictions on the Sabbath and holidays including refraining from eating certain foods, writing, and directly using electricity. (*Id*. ¶¶ 20–21.) The SAC avers that Otisville houses a large population of Jewish inmates and the administration is aware of Jewish religious requirements as they pertain to inmates. (*Id*. ¶ 22.) For example, *pro se* Plaintiff and other Jewish observers at Otisville dress differently on Jewish holidays and are allowed to wear white clothing instead of the standard issue dark khaki uniform. (*Id*. ¶¶ 31–32.) BOP written policies also provide details on religious requirements for the Sabbath and other holidays, stating that "observant Jews from sunset Friday evening to one hour after sunset Saturday night do not use

2

electrical appliances, do not ride in a vehicle, do not write, cook, sew, nor turn electricity off and on. (*Id*. ¶ 26.)  Further, while the BOP permits the administration of small amounts of alcoholic beverages during Jewish holidays, requiring a Jewish inmate to use a breathalyzer is considered a violation of their religious observance because it activates an electric charge in order to produce a reading. (*Id*. ¶¶ 35, 22, ECF No. 55-3.)

On September 17, 2017, Otisville administrators signed and posted a memo detailing the upcoming Sukkot holiday. (*Id*. ¶ 43.) The memo noted that Sukkot was a weeklong holiday beginning sundown on Wednesday, October 4, 2017 and ending at nightfall on Wednesday, October 11, 2017, and that "a list of authorized participants will be made available to staff." (*Id*. ¶¶ 47, 49.) The memo advised that a religious structure would be temporarily installed at Otisville for the religious observance of Sukkot. (*Id*. ¶ 50.)  The SAC avers that at all relevant times to the instant complaint, a "Post Order" has been made available, which directed officers to postpone any non-security random urinalysis or breathalyzer tests to observant Jews. (*Id*. ¶ 51.)

The SAC notes that the Federal Bureau of Prisons ("BOP") utilizes the SENTRY system[3] to enter an initial religious preference ("RLG") of an incarcerated individual at their initial classification, which the chaplain coordinates and oversees. (*Id*. ¶ 37.) The SAC alleges that the SENTRY system is also used to produce a list of randomly selected inmate names for random urinalysis for the month. (*Id*. ¶ 48.)

On Friday, October 6, 2017, *pro se* Plaintiff observed Sukkot with other members of the Jewish community at Otisville. (*Id*. ¶ 53.) *Pro se* Plaintiff alleges that despite knowing that it was a religious holiday, Warden Blackensee, JL Maldonado, Matt Whinnery and Chris Entzel ordered drug testing at the facility. (*Id*. ¶ 55.)

---

[3] SENTRY is the BOP's primary mission support database. The system collects, maintains, and tracks critical inmate information, including inmate location, medical history, behavior history, and release data.

Defendant Rezak was dispatched to Otisville to administer random urinalysis and breathalyzer tests. (*Id*. ¶ 60.)  According to the SAC, Officer Rezak was known to be abusive towards Jewish inmates and their families. (*Id*. ¶ 30.) The SAC alleges that while forty percent of Otisville camp at that time was Jewish, nearly all of those called to submit to random testing that day were Jewish. (*Id*. ¶ 62.)  *Pro se* Plaintiff was paged to the officers' station and Defendant Rezak informed *pro se* Plaintiff that he had been summoned to take a urine and breathalyzer test. (*Id*. ¶ 65.) *Pro se* Plaintiff responded that he was prohibited from complying with the request due to the religious holiday. (*Id*. ¶ 66.)  The SAC states that Defendant Rezak responded that he "did not care" and further informed *pro se* Plaintiff that if he did not take the breathalyzer and urinalysis, he would send *pro se* Plaintiff to solitary confinement in the SHU (Special Housing Unit). (*Id*. ¶ 70.) *Pro se* Plaintiff asked Rezak to postpone the urinalysis and breathalyzer until after the holiday or call the lieutenant on duty to further discuss the issue, but Defendant Rezak allegedly refused and threatened to send *pro se* Plaintiff to solitary confinement if he did not comply. (*Id*. ¶¶ 71–72.) *Pro se* Plaintiff alleges that Defendant Razak was motivated by discriminatory animus toward Jewish people. (SAC ¶¶ 33, 34, 45). *Pro se* Plaintiff submitted to the breathalyzer test and urinalysis in fear of repercussions by Defendant Rezak. (*Id*. ¶ 76.)  By submitting to the tests, *pro se* Plaintiff was forced to violate his religious obligations by using a writing utensil (since he had to affix his signature to related paperwork) and using electricity by blowing into the breathalyzer. (*Id*. ¶ 77.)

### B.  Related Administrative Proceedings and Alleged Retaliation

Beginning on October 10, 2017, *pro se* Plaintiff filed a series of administrative complaints pursuant to the BOP's four-step Administrative Remedy Program. (*Id.* ¶¶ 121–49; *see* 28 C.F.R. § 542.10 et seq.) On March 27, 2018, the National Inmate Appeals wrote back to *pro se* Plaintiff

rejecting his claim and agreeing with Warden Blackensee's handling of *pro se* Plaintiff's issue. At all stages of the BOP Administrative Remedies Program, *pro se* Plaintiff's claims focused on allegations against Defendant Rezak regarding the incident on October 6, 2017 and *pro se* Plaintiff's request to have Defendant Rezak removed from the facility. (*Id*. ¶ 149.) Supervisory Defendants submitted a declaration containing a copy of the administrative tort claim that *pro se* Plaintiff further filed with a Regional Office of the Federal Bureau of Prisons ("BOP") on October 3, 2019. (ECF No. 65-1.) *Pro se* Plaintiff's FTCA claim was denied on October 8, 2019 for failure to allege a physical injury under the FTCA. (ECF No. 65-2.) The denial letter states that *pro se* Plaintiff could bring an action against the United States within six months of the date of the letter if he dissatisfied with the decision. (*Id.*) There is no indication based on the materials the received by the Court in the instant case that *pro se* Plaintiff filed an action within that time frame.

Further, *pro se* Plaintiff alleges that Nicole Gulliver (a non-party) was responsible for retaliatory acts against him following his pursuit of administrative remedies (SAC ¶ 152.) The SAC asserts that *pro se* Plaintiff suffered extreme emotional distress and subsequently suffered a heart attack requiring a triple bypass heart surgery in June 2018. (SAC ¶ 156.) *Pro se* Plaintiff asserts that he continues to suffer from anxiety and depression from the trauma caused by the incident on October 6, 2017. (*Id*. ¶ 84.)

Based on the foregoing, *pro se* Plaintiff brings claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Claims I–III), 42 U.S.C. § 1985 (Claim IV), and Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 (Claim V). *Pro se* Plaintiff also brings five claims against the United States for violations against *pro se* Plaintiff's constitutional rights and New York Common Law (Counts VI–X). *Pro se* Plaintiff also seeks to add Nicole Gulliver as a defendant in the instant case.

## RELEVANT PROCEDURAL HISTORY

*Pro se* Plaintiff filed his initial complaint *pro se* October 4, 2019. (ECF No. 2.) In an Order issued by this Court dated November 8, 2019, the Court dismissed several claims raised in *pro se* Plaintiff's initial complaint for failure to state a claim and on immunity grounds. *Pro se* Plaintiff's claims against Defendant Rezak arising under *Bivens* and RFRA survived. (ECF No. 4.) The Court terminated all defendants except Defendant Rezak and granted *pro se* Plaintiff leave to file an amended complaint. *Pro se* Plaintiff filed an Amended Complaint on December 26, 2019. (ECF No. 5.)

Between 2020 and mid-2023, Plaintiff struggled to properly serve all Defendants. Further, this Court issued two separate Orders to Show Cause during that time frame due to *pro se* Plaintiff's lack of communication with the Court. (See ECF Nos. 12, 20.) Plaintiff was warned that failure to comply would result in dismissal of this case for want of prosecution. *Pro se* Plaintiff responded to the most recent Order to Show Cause on February 14, 2023. (ECF No. 21.) With the assistance of private counsel[4], Plaintiff filed a Second Amended Complaint on February 26, 2024. (ECF No. 55.) Supervisory Defendants and Defendant Rezak filed respective motions to dismiss on June 13, 2024. (ECF Nos. 63, 67) as well as corresponding Memoranda of Law in Support of their motions. (ECF Nos. 64, 68.) Plaintiff did not file any opposition briefs by the designated date (May 24, 2024) and was granted an extension until December 20, 2024 to respond. (*See* ECF No. 47.)  As of the filing of this Opinion and Order, *pro se* Plaintiff has neither filed any oppositions to either motion to dismiss nor communicated with the Court since February 2024.

---

[4] *Pro se* Plaintiff was represented by Steven A. Feldman, Esq. from November 28, 2023 until October 21, 2024 when the Court granted counsel's motion to withdraw, after which Plaintiff was deemed to be proceeding pro se. (*See* ECF No. 70.)

## LEGAL STANDARDS

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") provides in relevant part, that a case is properly dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. When resolving a Rule 12(b)(1) motion for lack of lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). *Pro se* Plaintiff bears the burden of demonstrating by a preponderance of the evidence that subject matter jurisdiction exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996).

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry

is whether the *pro se* Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The present motion is unopposed by the *pro se* Plaintiff. However, failure to oppose a motion to dismiss is not in itself grounds for dismissal. *Mateo v. Westchester Cnty.*, No. 18-CV-03499 (NSR), 2020 WL 5802838, at *3 (S.D.N.Y. Sept. 29, 2020) (quoting *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)) ("The same principle [as applies to Fed. R. Civ. P. 12(c) motions] is applicable to a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss an action on the basis of the complaint alone.") Since the veracity of well-pled facts in the complaint is not in dispute during 12(b)(6) proceedings, the court is only required to rule on matters of law, which it is equipped to do regardless of the lack of opposition from a plaintiff. *McCall* at 322-323. Thus, the legal standard for a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted does not change based on the presence or absence of reply from a plaintiff. *See id.*

## DISCUSSION

### I.    Alleged Constitutional Violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* (Claims I-III)

*Pro se* Plaintiff alleges that Supervisory Defendants and Defendant Rezak violated his First Amendment right to free exercise of religion (SAC ¶¶ 200 (Claims I)), his Fifth Amendment rights to due process and equal protection (*Id.* ¶ 209 (Claim II)), and his Eighth Amendment right to be free of cruel and unusual punishment (*Id.* ¶ 222 (Claim III)). *Pro se* Plaintiff asserts these claims under *Bivens* in which the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *McGowan v.*

*United States*, 825 F.3d 118, 123 (2d Cir. 2016) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)). For the reasons that follow, the Court grants Supervisory Defendants' and Defendant Rezak's motions to dismiss *pro se* Plaintiff's *Bivens* claims without prejudice to renew.

### A. *Bivens* Claims against Supervisory Defendants

This Court has previously dismissed *pro se* Plaintiff's *Bivens* claims against Supervisory Defendants asserted in his initial complaint for failing to demonstrate their personal involvement in any alleged deprivation of constitutional rights. (ECF No. 4.) Like the pleadings before, the SAC also fails to articulate Supervisory Defendants' personal involvement, thus necessitating the Court dismissal of the *Bivens* claims against Supervisory Defendants under the law-of-the case doctrine.

The law-of-the-case doctrine "holds that when a court has ruled on an issue, that decision should generally be adhered to by the court in subsequent stages unless cogent and compelling reasons militate otherwise." *Delville v. Firmenich Inc.*, 23 F. Supp. 3d 414, 425 (S.D.N.Y. 2014) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). *See also In re Peters*, 642 F.3d 381 (2d Cir. 2011) (noting that while not binding the law-of-the-case doctrine counsels against a court revisiting prior rulings absent compelling reasons such as the need to correct a clear error or prevent manifest injustice).

As in the initial complaint, the only allegations against Blackensee, Whinnery, Entzel, and Maldonado were that they supervised or were responsible for the supervision of Defendant Rezak. Scant allegations against Chaplain Richter, viewed in the light most favorable to *pro se* Plaintiff, fail to connect Richter to any unconstitutional conduct against *pro se* Plaintiff.

A plaintiff asserting claims under *Bivens* must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages) (internal quotation marks omitted). A defendant may not be held liable under *Bivens* solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). A plaintiff "must plead and prove the elements of the underlying constitutional violation directly against the official." *Reynolds v. United States*, No. 21-CV-4763 (NSR), 2021 WL 3501201, at *2 (S.D.N.Y. Aug. 9, 2021) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020)).

Here, the SAC does not offer substantive allegations that would indicate Supervisory Defendants direct involvement in any purported constitutional violations. Further, *pro se* Plaintiff's inferences that their actions were rooted in malicious or discriminatory purposes are merely conclusory. Accordingly, the Court finds that *pro se* Plaintiff's SAC remains deficient for reasons the Court articulated in its prior opinion as to the Supervisory Defendants. *Pro se* Plaintiff has not plausibly alleged viable *Bivens* claims against the Supervisory Defendants and the Court grants the Supervisory Defendants' motion to dismiss within respect to *pro se* Plaintiff's *Bivens* claims without prejudice.

   **B.    *Bivens* Claims against Defendant Rezak**

Defendant Rezak's claims are not precluded under the law-of-the-case doctrine because the Court did not substantively rule on them in its prior Order. Therefore, the Court addresses them now. For the reasons below, the Court also grants Defendant Rezak's motion to the dismiss *pro se*

Plaintiff's *Bivens* claims.

In *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Carattini v. Behun*, No. 21 CIV. 9373 (NSR), 2024 WL 3274663 (S.D.N.Y. July 2, 2024) (quoting *McGowan v. United States*, 825 F.3d 118, 123 (2d Cir. 2016)). To state a claim under *Bivens*, "a plaintiff must allege that an individual defendant personally committed a specific wrongful act that violated a well-established constitutional right of which a reasonable person would have *known*." *Adekoya v. Holder*, 751 F. Supp. 2d 688, 694 (S.D.N.Y. 2010) (citing *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987) ); *see Barbaro v. United States*, 521 F. Supp. 2d 276, 281 (S.D.N.Y. 2007) ("The elements of a *Bivens* claim are: (1) that a defendant acted 'under color of federal law' (2) 'to deprive plaintiff of a constitutional right.'") (quoting *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995)).

The Supreme Court has recognized *Bivens* claims in only three circumstances in 54 years: (1) unreasonable search and seizure under the Fourth Amendment, *Bivens*, 403 U.S. 388 (1971), (2) employment discrimination under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and (3) inadequate medical treatment of an inmate under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Following *Bivens, Davis*, and *Carlson*, the Supreme Court has retreated from recognizing implied damages remedies under the Constitution and "made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *See Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (internal quotation marks and citation omitted).

A court evaluating a Bivens claim conducts a two-step inquiry to determine whether to imply a *Bivens* cause of action in a new context or against a new category of defendants. *Carattini*

*v. Behun*, No. 21 CIV. 9373 (NSR), 2024 WL 3274663, at *3 (S.D.N.Y. July 2, 2024) (citing *Abbasi* at 135–38). First, a court considers "whether the case presents 'a new Bivens context'— *i.e.*, is it 'meaningful[ly]' different from the three cases in which the [Supreme] Court has implied a damages action." *Abbasi* at 139. Second, if a "new context" is presented, a court considers whether "'special factors' indicat[e] that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Abbasi* at 140. The Supreme Court has found that a *Bivens* remedy "is an extraordinary thing that should rarely if ever be applied in 'new contexts.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (citing *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 69 (2001)). A *Bivens* remedy is not available, "where there are 'special factors counselling hesitation in the absence of affirmative action by Congress,'" (*Grossman v. United States*, No. 19-CV-9191 (NSR), 2019 WL 5887365, at *3 (S.D.N.Y. Nov. 8, 2019)) (quoting *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017)).

Here, the SAC avers that Defendant Rezak directly violated *pro se* Plaintiff's First Amendment right to free exercise of religion, his Fifth Amendment rights to due process and equal protection, and his Eighth Amendment right to be free of cruel and unusual punishment. (SAC, ¶¶ 200, 209, 222.) While supporting allegations of personal involvement, none of these claims fall into the three circumstances recognized by the Supreme Court in *Bivens*, *Davis*, or *Carlson*. As to *pro se* Plaintiff's First Amendment claims, the Supreme Court has "never held that Bivens extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). Further holding that "prisoners have no right to bring a *Bivens* action for violation of the First Amendment." *Caraballo v. Pliler*, No. 21- CV-10476, 2023 WL 3467185, at *7 (S.D.N.Y. May 15, 2023) (citations omitted). *Pro se* Plaintiff's First Amendment claims meaningfully differ from the three instances recognized by the Supreme Court, thereby creating a new context under *Bivens*. Next,

courts in this Circuit have repeatedly held that prisoners' Fifth Amendment claims constitute a new context. *See*, *e.g.*, *Negron v. United States,* No. 19-CV-05442 (PMH), 2020 WL 5634304, at *8 (S.D.N.Y. Sept. 21, 2020) (inmate's Fifth Amendment claim arose in "a new racial and/or religious context"); *Oneil v. Rodriguez,* No. 18-CV-3287 (AMD) (LB), 2020 WL 5820548, at *3 (E.D.N.Y. Sept. 30, 2020) ("equal protection claim based on treatment in prison" presents a new context). *Pro se* Plaintiff's claims are meaningfully different from the Fifth Amendment-based gender employment discrimination claims in *Davis*. Finally, although *Carlson* recognized a remedy for violation of a prisoner's Eighth Amendment rights, the plaintiff there was claiming failure to provide adequate medical treatment, not excessive force like *pro se* Plaintiff in the instant case. *See Ojo v. United States*, No. 16-CV-4112, 2019 WL 3852391, at * 13 (E.D.N.Y. Aug. 15, 2019) ("Since no Supreme Court decision has ever extended Bivens to encompass the specific context presented by plaintiff's excessive force claims, this cause of action presents a new Bivens context.")

Since all three of *pro se* Plaintiff's *Bivens* claims assert causes of action in a new context the Court turns the second part of the *Abbasi* inquiry and evaluates whether "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Abbasi* at 136. The Supreme Court did not offer an "exhaustive list of differences that are meaningful enough to make a given context a new one," but has offered in examples that "might prove instructive." *Id.* Special factors counsel against extending *Bivens* to new context in *pro se* Plaintiff's claims, including Congressional deference and the availability of other alternative remedies to *pro se* Plaintiff. *See e.g. Egbert v. Boule*, 596 U.S. 482, 492, 142 S. Ct. 1793, 1803, 213 L. Ed. 2d 54 (2022) ("new contexts… represent situations in which a court is not undoubtedly better positioned than Congress to create a damages action"). Courts have often noted the undesirability of excessive judicial

intervention into prison administration, as "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." *Schulte v. Bureau of Prisons*, No. 20-cv-2795, 2022 WL 1468017, at *4 (S.D.N.Y. May 10, 2022) (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). The Court finds that those factors weigh against allowing *pro se* Plaintiff's *Bivens* claims against Defendant Rezak to proceed and dismisses *pro se* Plaintiff's claims without prejudice.

## II.    Violation of 42 U.S.C. § 1985, Conspiracy To Interfere With Civil Rights (Claim IV)

Next, *pro se* Plaintiff claims that the Defendants violated 42 U.S.C. § 1985(3) by conspiring to deprive *pro se* Plaintiff of his right to equal protection under the law, primarily by inferring a failure to adhere to or by manipulating the SENTRY system. (SAC ¶¶ 234–39.) The Court does not find that *pro se* Plaintiff offers any support for allegations of such or any conspiracy. Further, the intra-corporate conspiracy doctrine renders Defendants legally incapable of conspiring. Accordingly, the Court grants Defendants' motions to dismiss *pro se* Plaintiff's 1985(3) claims with prejudice.

42 U.S.C. § 1985(3) prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws or of equal privileges and immunities under the laws. To adequately plead a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). Furthermore, "[t]he conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'"

*Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

As an Orthodox Jew, *pro se* Plaintiff is within the scope of the protections accorded by 42 U.S.C. § 1985(3). *See LeBlanc-Sternberg v. Fletcher*, 781 F. Supp. 261, 269 (S.D.N.Y. 1991) ("[R]eligious-based discrimination is clearly within the ambit of this particular statute.) However, *pro se* Plaintiff does not sufficiently allege a conspiracy between Defendants. *See Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010) ("A § 1985 conspiracy claim that is only supported by conclusory assertions cannot survive a motion to dismiss."); *see also Boddie v. Schneider,* 105 F.3d 861, 862 (2d Cir.1997) (holding that a § 1985 conspiracy claim must state a factual basis, as "a complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss" (internal citations and quotations omitted)). A complaint must allege overt acts in furtherance of the conspiracy "with at least some degree of particularity." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999). Here, the SAC fails to offer particularized allegations against Defendants as to any explicit act in furtherance of a conspiracy. *Pro se* Plaintiff's tenuous allegations as to Defendants' use or disregard of SENTRY protocol for the administration of urinalysis and breathalyzer tests on Sukkot are simply conclusory. (*See* SAC ¶¶ 237–38.) *Pro se* Plaintiff does not provide sufficient allegations to support inferences that Defendants acted in concert or agreed, in any way, to deprive *pro se* Plaintiff of his rights via any manipulation or disregard of the SENTRY system or otherwise. *Pro se* Plaintiff's conclusory allegations are not sufficient to sustain § 1985 conspiracy claims.

Moreover, even if *pro se* Plaintiff was given leave to amend the § 1985 claims against Defendants, Defendants are legally incapable of conspiring together under the intra-corporate conspiracy doctrine and, as a result, *pro se* Plaintiff's claims are dismissed with prejudice. The

intra-corporate conspiracy doctrine "provides that employees or agents of a single corporate entity, acting within the scope of their employment, are legally incapable of conspiring together" under § 1985 *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 648 (S.D.N.Y. 2020) (quoting *Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015)). During the relevant times of the SAC, Supervisory Defendants and Defendant Rezak were all employed at FCI Otisville and are, therefore, incapable conspiring for the purposes of § 1985. Further, alleged personal bias is not sufficient to defeat the intra-corporate conspiracy doctrine. *See e.g.*, *Coggins v. County of Nassau*, E.D.N.Y.2013, 988 F.Supp.2d 231, affirmed in part, appeal dismissed in part 776 F.3d 108, certiorari denied 135 S.Ct. 2335, 575 U.S. 1011, 191 L.Ed.2d 981. As a result, *pro se* Plaintiff's § 1985 claims are dismissed with prejudice as to all Defendants.

## III.    Violation of Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1 (Claim V)

Next the Court turns to *pro se* Plaintiff's RFRA claims. *Pro se* Plaintiff alleges that by compelling *pro se* Plaintiff to submit to drug testing Defendants forced him to violate his religious commitments. (SAC ¶¶ 242–46.) Among other things, RFRA prohibits the federal government from substantially burdening a person's exercise of religion, "even if the burden results from a rule of general applicability," 42 U.S.C. § 2000bb–1(a), except when the Government can "demonstrat[e] that application of the burden to the person—(1) [furthers] a compelling governmental interest; and (2) is the least restrictive means of furthering that ... interest," § 2000bb–1(b). *Gonzales v. O'Centro Espirata Beneficiente Uniao do Vegetal,* 546 U.S. 418 (2006). For the reasons below, the Court grants Supervisory Defendants' motion to dismiss *pro se* Plaintiff's RFRA claim without prejudice and denies Defendant Rezak's motion to dismiss the RFRA claim against him.

16

**A.    RFRA Claims against Supervisory Defendants**

As with *Bivens* claims against the Supervisor Defendants, this Court has previously dismissed *pro se* Plaintiff's RFRA claims against Supervisory Defendants for failure to demonstrate their personal involvement in any alleged violations. As in the initial complaint, the SAC does not offer substantive allegations that would indicate Supervisory Defendants were directly involved in any purported burdening of *pro se* Plaintiff's religion. In fact, the SAC notes the various ways in which Supervisory Defendants supported religious observances through policies, memos, guidelines, and a post order aimed at religious accommodations for incarcerated Jewish individuals.

Since the SAC does not supply new or sufficient facts to support RFRA claims against the Supervisory Defendants, the law-of-the-case doctrine is applicable here as well. *See, e.g., Stapleton v. Pagano*, No. 19-CV-952 (KMK), 2021 WL 3501163, at *4 (S.D.N.Y. Aug. 9, 2021) ("Because the factual claims in the Amended Complaint are materially identical to those in the Complaint, the law of the case doctrine counsels against reconsideration of the Court's . . . dismissal of the first Complaint." (quotation marks omitted)). Therefore, as currently written, the sac repeats the factual deficiencies in the initial complaint by failing to assert plausible RFRA claims against Supervisory Defendants. As such, the Court grants Supervisory Defendants' motion to dismiss *pro se* Plaintiff's claims without prejudice.

**B.    RFRA Claims against Defendant Rezak**

As for allegations against Defendant Rezak, the Court finds that *pro se* Plaintiff has sufficiently pled that Defendant Rezak burdened *pro se* Plaintiff's exercise of his religious by obligating him to complete a urinalysis and breathalyzer test during Sukkot under protest. (SAC ¶¶ 66–77.) Defendant Rezak had been placed on notice of the religious holiday. Observance of

Sukkot had been publicized via an official BOP memo, a large and centrally visible religious structure had been erected at Otisville, and at least some Jewish observers wore non-standard clothing to signify their religious observances on that day. (*Id.* ¶¶ 31, 32, 43, 51, 52.) *Pro se* Plaintiff alerted Defendant Rezak of his religious obligations when *pro se* Plaintiff was summoned to complete urine and breathalyzer tests. (*Id.* ¶ 66.) Further, *pro se* Plaintiff offered to take the tests after the Jewish holiday and asked for to speak to a superior officer to further discuss the issue, as an attempt to comply with the BOP policy and his religious practices. (*Id.* ¶ 71.) Plaintiff alleges that Defendant Rezak could have pursued less restrictive means to ensure that *pro se* Plaintiff complied with both testing and religious requirements instead of threatening to punish *pro se* Plaintiff with solitary confinement. (*Id.* ¶ 66.) Accepting *pro se* Plaintiff's allegations as true and viewing them in a light most favorable to the *pro se* Plaintiff for the purposes of ruling on the motion to dismiss, the Court finds that *pro se* Plaintiff has adequately supported his RFRA claim against Defendant Rezak at this stage.

While Defendant Rezak raises a qualified immunity defense in his support brief, courts in this Circuit have long held that qualified immunity "turns on factual questions that cannot be resolved at [the motion to dismiss] stage of proceedings." See *Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 793 (2d Cir.2002); *see also Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004) ("[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee,* 332 F.Supp.2d 659, 666 (S.D.N.Y.2004). As such, the Court denies Defendant Rezak's motion to dismiss the RFRA claims.

## IV.    Claims Against the U.S. Government (Claims VI–X)

The Government moves to dismiss claims against the United States, which is not a named

defendant in this action, for lack of subject-matter jurisdiction. The SAC alleges retaliation First Amendment and Fourteenth Amendment claims against the United States (Claim VI). (SAC ¶ 248.) *Pro se* Plaintiff also asserts claims against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80, specifically *pro se* Plaintiff raises an FTCA claim based on "[r]etaliation under New York Common Law" (Claim VII) (*Id.* ¶¶ 254–56)), FTCA claims for negligent and intentional infliction of emotional distress (Claims VIII and IX, respectively) (*Id.* ¶¶ 260, 268, and an FTCA claim for negligent hiring, training, retention and supervision (Claim X) (*Id.* ¶ 272). The Court agrees that the United States has not waived sovereign immunity and therefore all claims against it are dismissed, with prejudice, for lack of subject-matter jurisdiction.

### A.    Constitutional Claims (Claim VI)

Supervisory Defendants argue that *pro se* Plaintiff's First and Fourteenth Amendment retaliation claims must be dismissed because the United States has "not waived its sovereign immunity with respect to claims that its employees have committed constitutional torts." (Def. Mem. p. 20.) (quoting *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *8 (E.D.N.Y. Sept. 2, 2014). The Court agrees. Claims that the United States or its employees unconstitutionally retaliated against *pro se* Plaintiff are barred by sovereign immunity. *See, e.g.*, *Cohen*, 640 F. Supp. 3d at 344 (dismissing First Amendment retaliation claim because the United States "'has not waived . . . sovereign immunity with respect to claims that [government] employees have committed constitutional torts' under the federal constitution" (quoting *Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019)).

Further, *pro se* Plaintiff requests that Nicole Gulliver, a non-party, as a new defendant for alleged retaliation claims. The Court denies *pro se* Plaintiff's request because his retaliation

allegations against Gulliver are distinct from claims in the instant case. Accordingly, *pro se* Plaintiff is directed to commence a separate action if he wishes to seek redress for the alleged retaliation claims against Gulliver, taking note of any potential statute of limitations that may apply.

### B.    FTCA Claims (Claims VII – X)

The Government further contends that the FTCA waiver of sovereign immunity for common-law torts is limited and preconditioned on the exhaustion of administrative remedies and *pro se* Plaintiff has failed to exhaust those remedies here. (ECF No. 64, p. 16.) The Court agrees and grants Supervisory Defendants' motion to dismiss claims against the United States with prejudice.

Before an action may be filed under the Federal Tort Claims Act, "an administrative claim must be presented to the federal agency employing the person whose act or omission caused the injury." *Valdez v. United States*, No. 08-cv-4424, 2009 WL 2365549, at *5 n.7 (S.D.N.Y. July 31, 2009).  "Presentation of an administrative claim to the appropriate agency is a jurisdictional prerequisite to suit." *Id.* (citing 28. U.S.C. § 2675(a) To satisfy the FTCA's presentment requirement, a plaintiff "must provide a reviewing agency with sufficiently specific information as to the basis of the claim, the nature of claimant's injuries, and the amount of damages sought such that the agency can reasonably understand what it must investigate to determine liability, to value the claim, and to assess the advisability of settlement." *Collins v. United States*, 996 F.3d 102, 119 (2d Cir. 2021). "Without a specific description of injuries, the ability of the government to expedite the fair settlement of tort claims—the purpose of the exhaustion requirement—is lost." *Guthrie v. US Fed. Bureau of Prisons*, No. 09 CIV. 990 (LAP), 2010 WL 2836155, at *4 (S.D.N.Y.

July 7, 2010), *aff'd*, 421 F. App'x 120 (2d Cir. 2011).

To exhaust relevant administrative remedies as an incarcerated individual, a "federal inmate[ ] must comply with the BOP's Administrative Remedy Program, a multi-step process for inmates who 'seek formal review of an issue relating to any aspect of his/her own confinement.'" *Rosenberg v. Pliler*, No. 21-CV-5321, 2021 WL 6014938, at *2 (S.D.N.Y. Dec. 20, 2021) (quoting 28 C.F.R. § 542.10(a)). The BOP's Administrative Remedy Program consists of a four-step process: (1) an inmate must first attempt to resolve the issue informally by presenting the issue to the prison staff, 28 C.F.R. § 542.13; (2) if the issue is not resolved, the inmate must then submit a Request for Administrative Remedy (BP-9) form to the Warden within 20 days of the incident that forms the basis of the request, *Id.* § 542.14; (3) if the request is denied, the inmate may appeal the decision using a BP-10 form to the Regional Director within 20 days of the date that the Warden signed the response, *Id.* § 542.15(a); and finally, (4) if the inmate is not satisfied with the Regional Director's response, he may appeal within 30 days to the General Counsel in the Central Office using a BP-11 form. *Id.* "No administrative remedy appeal is considered finally exhausted until it is considered by BOP's Central Office." (S.D.N.Y. Oct. 6, 2021). *LoCurto v. United States Bureau of Prisons*, No. 23-CV-387-DG-SJB, 2024 WL 4884343, at *5 (E.D.N.Y. Aug. 12, 2024) (citing *Cruz v. Hastings*, No. 20-CV-4392, 2021 WL 4691375, at *4 (S.D.N.Y. Oct. 6, 2021)). Administrative exhaustion, is "jurisdictional, [and] cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).  If the plaintiff fails to first present his claim to the appropriate agency and exhaust administrative remedies, then the plaintiff's tort claims must be dismissed. *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (citing *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 1983–84, 124 L.Ed.2d 21 (1993)); *Foster v. Fed. Emergency Mgmt. Agency*, 128 F. Supp. 3d 717, 728 (E.D.N.Y. 2015) ("Failure to comply

with [exhaustion] results in dismissal of the suit.").

Accepting *pro se* Plaintiff's assertions as true and viewing them in the most favorable light to *pro se* Plaintiff, *pro se* Plaintiff did not properly exhaust his administrative remedies. *Pro se* Plaintiff began informal resolution with prison staff prior to filing his BP-9 (step 2) on October 10, 2017. (SAC ¶¶ 92, 98.) *Pro se* Plaintiff was instructed to submit a BP-8 on October 17, 2018 and received a response on October 23, 2017 from Camp Administrator Chris Entzel, stating that *Pro se* Plaintiff's complaint was forwarded to the appropriate office for investigation. (SAC ¶ 101.) *Pro se* Plaintiff reports that he was unhappy with results of the administrative complaints filed and filed a BP-10 (step 3) dated November 9, 2017 and was rejected on November 21, 2017 for failure to provide a copy of the BP-09 response from the warden. (SAC ¶ 139.) *Pro se* Plaintiff then re-submitted on December 12, 2017 and attached all the required materials. (SAC ¶ 145.) Finally, *Pro se* Plaintiff submitted a BP-11 (step 4) on January 29, 2018 and it was received by the Federal BOP's Administrative Remedy Section on February 5, 2018. (SAC ¶ 148.) On March 27, 2018, the National Inmate Appeals wrote back to *pro se* Plaintiff rejecting his claim and agreeing with Warden Blackensee's handling of *pro se* Plaintiff's issue. In each of these filings *pro se* Plaintiff alleged that Defendant Rezak violated his religious rights on October 6, 2017 and was seeking his removal (ECF. Nos. 55-6, 55-7, 55-8, 55-9, 55-11.) At no point during the BOP administrative process did *pro se* Plaintiff explicitly assert the FTCA claims asserted in his SAC—retaliation; negligent and intentional infliction of emotional distress; or negligent hiring, training, retention and supervision claims. Moreover, *pro se* Plaintiff did not specify the nature of his injuries, and the amount of damages sought required to assess the advisability of liability and settlement.

*Pro se* Plaintiff failed to properly exhaust his administrative remedies and there is no indication in the SAC or the docket that *pro se* Plaintiff pursued any further action following

denial. Supervisory Defendants annexed the denial letter of *pro se* Plaintiff's administrative tort claim filed a Regional Office of the Federal Bureau of Prisons ("BOP") on October 3, 2019. (ECF No. 65-1.)  *Pro se* Plaintiff's FTCA claim had been denied in a letter dated October 8, 2019 for failing to allege a physical injury under the FTCA. (ECF No. 65-2.) The Court incorporates this letter into its analysis because, "when resolving a Rule 12(b)(1) motion for lack of lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings." *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). The denial letter states that *pro se* Plaintiff could bring an action against the United States in an appropriate federal court within six months of the date of the letter. Even if *pro se* Plaintiff had properly raised the FTCA claims during the BOP process and exhausted administrative remedies, there is no indication in the SAC or the docket that *pro se* Plaintiff pursued any further action, thereby time-barring his claims.

28 U.S.C. § 2401(b) establishes a second limitations period – that "[a] tort claim against the United States shall be forever barred ... unless action is begun within six months after the . . . final denial of the claim by the agency to which it was presented." (28 U.S.C. § 2401(b). A time-barred FTCA claim must be dismissed with prejudice. *See Barone* v. *United States*, No. 12 Civ. 4103 (LAK), 2014 WL 4467780, at *14 (S.D.N.Y. Sept. 10, 2014) (dismissing FTCA claim with prejudice because it was time-barred). *Pro se* Plaintiff has not responded to Defendants' motions to dismiss or has otherwise addressed arguments regarding exhaustion of administrative remedies or untimeliness (or potential equitable tolling). *Pro se* Plaintiff has failed to properly raise the FTCA claims alleged in the SAC by not exhausting his administrative remedies, authorizing the Court to dismiss *pro se* Plaintiff's tort claims for want of subject matter jurisdiction. *Foster v. Fed. Emergency Mgmt. Agency*, 128 F. Supp. 3d 717, 728 (E.D.N.Y. 2015) ("Failure to comply with [exhaustion] results in dismissal of the suit.").  As a result, *pro se* Plaintiff's FTCA claims are

dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Supervisory Defendants' (Otisville Warden B. Von Blackensee, Captain Matt Whinery, Executive Assistant/Camp Administrator Chris Entzel, Chaplain Avrohom Richter, and Associate Warden J.L. Maldonado) Motion to Dismiss in its entirety, and GRANTS IN PART and DENIES IN PART Defendant Rezak's Motion to Dismiss.

Specifically, the Court dismisses, without prejudice, *pro se* Plaintiff's claims against Supervisory Defendants under *Bivens* (Claims I-III) and the Religious Freedom Restoration Act ("RFRA") (Claim V). *Pro se* Plaintiff's claims against the United States (Counts VI–X) are dismissed with prejudice. Plaintiff's claims under 42 U.S.C. § 1985(3) (Claim IV) against Supervisory Defendants and Defendant Rezak are dismissed with prejudice. Further, the Court dismisses, without prejudice, claims against Defendant Rezak under *Bivens* (Claims I-III). However, *pro se* Plaintiff's RFRA claim (Claim V) against Defendant Resak survives. Finally, *pro se* Plaintiff's request to add Nicole Gulliver as a new defendant is denied.

*Pro se* Plaintiff is granted leave to file a Third Amended Complaint. *Pro se* Plaintiff will have until March 21, 2025 to do so, consistent with this order. *Pro se* Plaintiff is advised that the Third Amended Complaint will replace, not supplement, the Second Amended Complaint, and so any claims they wish to pursue must be included in, or attached to, the Third Amended Complaint. Defendants are directed to answer or otherwise respond to the Third Amended Complaint by April 11, 2025, and the parties are directed to complete and file a Case Management Plan and Scheduling Order (blank form attached) by May 2, 2025. If *pro se* Plaintiff fails to file a Third Amended Complaint, Defendant Rezak is directed to answer the Second Amended Complaint by April 11, 2025, and the parties are directed to complete and file a Case Management Plan and Scheduling

Order (blank form attached) by May 2, 2025. If *pro se* Plaintiff fails to file a Third Amended

Complaint within the time allowed, those claims dismissed without prejudice by this order will be

deemed dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the

motions at ECF No. 63 and 67 and to mail a copy of this Opinion to the *pro se* Plaintiff at the

address listed on ECF and to show service on the docket.

SO ORDERED.

SO ORDERED:

Dated: February 19, 2025
White Plains, New York

NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT                    Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x


                                                    **CIVIL CASE DISCOVERY PLAN**

                          Plaintiff(s),            **AND SCHEDULING ORDER**

        - against -



                          Defendant(s).    _____ CV _____ (NSR)



-------------------------------------------------------------x



  This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel,
pursuant to Fed. R. Civ. P. 16 and 26(f):


1.      All parties [consent] [do not consent] to conducting all further proceedings before a
        Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The
        parties are free to withhold consent without adverse substantive consequences.  (If all
        parties consent, the remaining paragraphs of this form need not be completed.)


2.      This case [is] [is not] to be tried to a jury.


3.      Joinder of additional parties must be accomplished by _____.


4.      Amended pleadings may be filed until _____.


5.      Interrogatories shall be served no later than _____, and responses
        thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil
        Rule 33.3 [shall] [shall not] apply to this case.

6.   First request for production of documents, if any, shall be served no later than
_____.

7.   Non-expert depositions shall be completed by _____.

     a.   Unless counsel agree otherwise or the Court so orders, depositions shall not be
held until all parties have responded to any first requests for production of
documents.

     b.   Depositions shall proceed concurrently.

     c.   Whenever possible, unless counsel agree otherwise or the Court so orders, non-
party depositions shall follow party depositions.

8.   Any further interrogatories, including expert interrogatories, shall be served no later than
_____.

9.   Requests to Admit, if any, shall be served no later than _____.

10.  Expert reports shall be served no later than _____.

11.  Rebuttal expert reports shall be served no later than _____.

12.  Expert depositions shall be completed by _____.

13.  Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.  **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.  Any motions shall be filed in accordance with the Court's Individual Practices.

16.  This Civil Case Discovery Plan and Scheduling Order may not be changed without leave
of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.  The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

        _____

                                    _____

                                    Nelson S. Román, U.S. District Judge